We'll hear Brown v. Halpin. Good morning, Your Honors. May it please the Court, my name is Ann Lynch and together with my colleague, Assistant Attorney General Josephine Graf, who is seated to my left, we represent the defendant's appellants in this case, the State of Connecticut, and Brenda Halpin. Your Honors, the District Court erred in denying the motion to dismiss for the following three reasons. First, the allegations of the complaint suggested that the plaintiff was speaking as an employee rather than a citizen. Second, at a minimum, reasonable retirement division directors in the position of Brenda Halpin could disagree over whether or not Attorney Brown was speaking as a citizen or as an employee. And third, the State of Connecticut had sovereign immunity that was not implicated by the allegations in the complaint to state a 3151Q claim. Your Honors, with regard to the first point, the plausible allegations, this Court in Jackler v. Byrne stated that the question of whether or not someone is speaking as a citizen or speaking as an employee is a question of law for the Court. And in the Seminole case, Iqbal versus... Let's go to Jackler because Jackler is the one that is giving me pause. Yes, Your Honor. There was a directive that she was to change her memo and that she wasn't to report to the commission her view of the requirement of the statute. And I think that this is a matter of public importance. I don't see how one could get away from that part of Jackler. It's not... It's a matter of public importance. And it's also... It doesn't seem to me that it's in furtherance of the employee's duty to alter her or retract her position, which is the one that was taken. I know that there are cases that say, look, if the department has a viewpoint, a policy viewpoint, you've got to march to that drummer. And that's part of being an employee. But it's another thing when you have a... It seems to me when you have a position here about how the statute is to be applied and whether it covers any employee or just employees... Any employment or just past employment. And the statute is crystal clear on that question. And indeed, Ms Brown was told by Ms Halpin and the others in the office that she was correct in her interpretation. So under those circumstances, why doesn't Jackler apply? All right, Your Honour. Thank you. Your Honour, the allegations in the complaint also allege allegations against a trustee. There was a State Employees Retirement Commission that the plaintiff alleges, and these are the plaintiff's allegations, that CERC, which was the commission, the State Employees Retirement Commission, of which Lindy Elmini was a trustee, has the power, the duty and the responsibility to conduct the business and activities of the State Employees Retirement System. And the plaintiff also alleged that the Retirement Services Division administered the provisions of the retirement plan under the... I'm talking about, if she didn't have the Jackler problem, I don't see that... I'm much more sympathetic to your side. It's the fact that she was told to curtail her speech. And then told to alter it. And when she refused, then no statement was made to the commission. That's where I have a problem. That's where I see Jackler coming in. But the facts that she's alleged are very important, Judge Walker, because the plaintiff stated in her complaint that a month into her job, she gets hired in September of 2012, according to her complaint. A month into her job, she's opining on the meaning of the term suitable and comparable in the state statutes. All that is all very well. Let me just be clear about my position. I've never liked Garcetti. I dissented in Weintraub. I think that but for the order to lie, this case is like Weintraub, and it would be with respect to her employment, and therefore your position would be fine. But we have Jackler. And Jackler says something quite specific about when somebody is ordered to lie. And I come... ..directly binds me in this. I'm not sure I understand Jackler all that much, but anyway, it's there, and that's the law of the circuit. So how is it that one part, not everything else, but one part of what was going on here isn't covered by Jackler? Is that... Is that clear enough so that qualified immunity does not apply? Well, Your Honours, I think it's critical that this Court take into consideration that what we're talking, what the speech that you're talking about in this particular case is an attorney's statutory interpretation that conflicts with a trustee's interpretation of a pension. But all that is fine. But her... The one claim that would survive is the claim that she was told to alter something falsely. And that may be covered by Jackler. And everything else, as far as I'm concerned, would be Garcetti, Weintraub and whatever. But we do have Jackler. May I respond? I saw the red light. We're both asking the same question. OK, yes. Your Honour, the first part of that is an allegation that she was asked to make, quote-unquote, false statements is not a factual allegation that you have to presume to be true. An allegation that I was told to make... But as to at least one of these, some may be viewed as conclusory, but as to at least one of these, she alleges specific facts. As to one of them. I believe that her specific facts, Your Honour, that she's alleged were that she had an interpretation of the term suitable and comparable. And that her interpretation was it had to be own occupation. I'm sorry, her interpretation was any occupation. And that the trustee of the trust said, nope, we've interpreted it as own occupation. It should continue to be interpreted as own occupation. And keep in mind, the facts as alleged in the complaint matter. The plaintiff comes and tells her boss, you have to interpret suitable and comparable to mean any occupation a month into the job. The trustee of the trust, whose obligation is to, you know, conduct the business says, nope, it's been interpreted as own occupation. That's how it should be interpreted. Where would my client, Brenda Halpin, where would she know? Where's the case law that puts her on notice, Your Honour, that when an attorney is opining on the meaning of a state statute, that she is speaking as a citizen and not as an employee? Where is that case to provide direction? May I just ask a different question? On the state claim, isn't this covered so long as what happened to her was discipline? And isn't the question of what is discipline in the state a far more complicated question than the equivalent effect of retaliation for a federal law if the First Amendment applies? It's precisely the case that the argument, the Burlington Northern Standard that my brother council here has argued should be the standard for 3151Q is not the appropriate standard. Well, what is the appropriate standard? The appropriate standard, Your Honour, is much like this court held in Evitazin. Is that clear enough, or is it something that if we dismiss the federal claim, then we can just dismiss the state claim without prejudice and let that be taken or remand that to the state and let that be taken care of. But if we don't, if we find against you that there is a federal claim, then should we certify the state one, find out what discipline means? That certainly would be within this court's- Well, of course it's within our discretion, but can you give us cases in the state that are clear enough on what discipline means? Your Honour, the seminal case that's been cited by both this court and other courts is the Connecticut Superior Court case, but it has been cited- Superior Court. It is, Your Honour. But it has- We don't have anything from the Connecticut Supreme Court. That is correct, Your Honour. You say that she was not subjected to an affirmative act of punishment, right? That's correct, Your Honour. But I don't understand that. She was stripped of her job responsibilities, correct? Well, she alleges she, that is an allegation, but that was found by- She didn't, she lost her benefits when she had to take a new job because of a different kind of job, she didn't have the same kind of benefit carryover, right? So isn't that a form of discipline? What she alleges, Your Honour, is that she lost her benefit and she said what she meant by that was it was going to take her three years to advance to a staff attorney three position, as opposed to a staff attorney two, that was that allegation. How is that not some sort of punishment or discipline? Your Honour, the court in the seminal case that's been cited by every court, including this one, in Evitazen, in Bombalecki versus Pastor, and it's been cited for the past almost two decades. The legislature has not seen fit to change the language of the statute. And what Bombalecki said was that the denial of a benefit, even one due and owing, is not discipline. And what Bombalecki did, and what this court did in Evitazen, is it looked at the dictionary definitions of discipline. And specifically, Black's Law Dictionary says that there has to be a punishment imposed after an official finding of misconduct. Discipline is a very term of art, if you will, in both this court and Bombalecki. What this court stated- Yeah, but what this court does, as to state law, is really not terribly interesting. The question is, is it discipline under Connecticut? And you have an intermediate court, a lower court, lowest court, saying that discipline is something, and against that you have what sounds like discipline to most human beings. So the question that we, in another case, said one thing or another doesn't really matter, because it's what Connecticut means by it. Well, then I would cite to what Judge Blue said, which is, again, the case that's been cited by every court that has addressed what is discipline under 3151Q. And what he said is, there may be policy reasons for creating a legal rule that the employer cannot be, in that case it was denied a promotion, because of the exercise of First Amendment rights. However, 3151Q is too slender a read to bear that weight. And what he did, your honors, was he looked at the other statutes that were in existence and that were promulgated shortly before 3151Q, specifically 3151M, which is commonly known as the whistleblower statute. And that statute prohibits discipline, discharge, or otherwise penalize. The Connecticut legislature has used a very specific term of art here. It's discipline or discharge. It hasn't said discipline, discharge, or otherwise discriminate against. In every court that has addressed it, this court said denial of tenure in Evitazin was not discipline. Bombalecki, denial of a promotion was not discipline. There's another superior court decision where it did involve a transfer. It was a high school teacher and a denial of a stipend that went along. And that was held not to be discipline. So it's a very specific term of art that the Connecticut legislature has not seen fit to change or expand upon the statute. So I submit that- I don't know how much one can make by inaction by legislatures. We all know that. So the question is, how much weight should one give to these lower courts, which have read it in a much narrower way than the federal retaliation? Thank you. Can I ask you something, just bringing you back to Jackler? So Jackler says, retracting a truthful statement to law enforcement officials and substituting one that is false would expose the speaker, whether he be a police officer or civilian, to criminal liability. So if we assume hypothetically that the plaintiff was ordered to make a false statement, do you dispute that she would have been exposed to a criminal liability for defrauding a public community if he had complied? I submit to your honor that I dispute that the plaintiff could be exposed to criminal liability for a different statutory interpretation, which is at issue in this case. I dispute that construing suitable and comparable to mean own occupation as opposed- Is there any precise language of the statute that in the record that I could look at? It's actually in the statute, your honor. And it is Connecticut General Statute. Do you have it in the special appendix or where is it? It was cited in my brief, your honor. That's 53A1196, 119 plus six. If I may have a moment just to grab it. It's actually in my reply brief. And it's on my reply brief. And it's on pages five and six of my reply brief. So your point is that the expression of differences of opinion. Over statutory, over terms in the statute. Would not subject that person to criminal liability. Absolutely, your honor. And I submit that- It's no wonder Jackler- Jackler doesn't apply. Would not necessarily apply. No. Let me just ask you whether Jackler, it's not quite as simple as that. Because everybody in the department agreed with her interpretation. But it was against the policy and it was politically inappropriate to advance that, as I understand it. What the complaint alleges, and I believe this is even alluded to in the appellee's brief, your honors. Is that the plaintiff comes in, she's employed for a month. She says, suitable and comparable is being interpreted as own occupation. It should be interpreted as any occupation. And then she prepares all these documents, these legal memorandums stating that as an attorney. That is shared with a trustee from the trust. And the trustee says, absolutely not, it's own occupation. And the allegations of the complaint are that when the trustees gave direction to the Ms. Halpin, the retirement division director, she followed those directions. She followed those instructions. So I submit to you that somebody who has a different opinion over a meaning of a statute, it is incredibly dangerous to sit there and give that First Amendment protection. Which is what the plaintiff is asking this court to do. And at a minimum. Is your argument that she could have been correct, but even if she were correct, that is not sustaining, in your view, because it's just a difference of opinion, rather than an ordering to tell a falsehood. Is that what you're saying? I don't even believe she was correct, your honor. But if she were correct? If she was correct in her legal opinion? Yes, let's say she were correct. What would your position be? I don't even know how Ms. Halpin- I assume it would be the same, that there could be differences in opinion, right? Yes, your honor, absolutely, even amongst judges. But in that situation, couldn't they have asked her to say, to add to what she said, this is my opinion, other opinions are different, rather than asking her to change something that she had written. I come back to the question of whether they asked her to do something which would be inappropriate in terms of what she had said, and therefore possibly open to criminal, and that's Jackler. Or whether they just said to her, hey, come on now, this is your view, it may be that, but note that other people had different views. She alleges something much stronger. And the question is, is that allegation clear enough and supported enough by facts, so that we're under Jackler, rather than under what would normally cover the situation? Your honor, in your dissent in the Weintraub case, you stated that speech that is commissioned by the employer- My dissent was my dissent. If it had been the majority, this would be a very different case. It was my dissent. And since my dissent, I've gone along with Judge Walker's majority opinion there. And indeed, I distinguished Jackler in Shinsky, a case where I thought Jackler didn't apply, and went along with Weintraub and Garcetti. But that's what we do as judges. I was right in Weintraub, but that doesn't make any difference. But in your- It was just the dissent. And what you said, though, your honor, is speech that is commissioned by the employer, and I believe you quoted from Garcetti in that regard. And in this particular case, I don't think that there's any dispute that the speech that was commissioned by the state in this particular case is the meaning of state statutes. And that is employee speech. That is the very essence of employee speech. What you're saying is this basically takes Jack- It's not Jackler, because Jackler was facts. And they're provable, false or not. Correct. Whereas when you're talking about interpreting a statute, it can be a matter of opinion. I don't know what the limits are. I suppose if it was a crazy opinion, that would be very easy. I mean, under no circumstances can they get benefits, period. That would be crazy. And then under those circumstances, I don't know where we'd be. But this is a question of, you're saying it's debatable at the very least, even though you think that your client is correct. And that, you say, is arguably different from Jackler. It's completely different. Jackler involved, as you know, your honor, an eyewitness account. You know, a probationary police officer sees a gentleman in the backseat of a squad car. His sergeant pulls the guy out, boom, boom, punches him, puts him back in the car. They tell the other officer to file a false report. That's an eyewitness account. Withdraw his true report and put in a false one. Correct. Yeah, so that's completely different than what is the meaning of suitable and comparable. And you know, your honors, I've spent a fair amount of time looking at this issue. And I looked at the Ford Motor Company case. That's in the context of a Title VII case. And what an individual has to do to mitigate their damages. As your honors know, in Title VII, an individual has to mitigate their damages by finding suitable employment. And on Ford Motor Company, the Supreme Court said that doesn't mean any job. That doesn't mean you have to take any job. So if the United States Supreme Court can say suitable doesn't mean any, then how, you know, if we're going to debate who's right, who's legal interpretation is right and who's is wrong. Can you clarify something for me? What was the plaintiff's position if she was just hired and she was there just a month? I mean, she was a lateral hire. Presumably, she came in with a background because she had the authority to make this statement to the commission, right? I mean, otherwise, why wouldn't it just be she was the lawyer, right? And Halpin is not a lawyer. And so it was the lawyer's opinion. I guess that's why it was required. She was, yes, she alleges that she was the lawyer. She alleges that she was hired to her allegations to advise the commission and the comptroller's office on all aspects of the State Employees Retirement Commission. That was her allegations that that was her job duties. And that's in her complaint. Thank you. Okay. Thank you very much, Your Honors. I have a question for you. As I understand it, you argue that if the plaintiff had altered her legal memoranda to the commission, she would have violated Connecticut law by, and I'm quoting from the red brief, facilitating the authorization and payment of benefit claims for people that she knew were not entitled to benefits. But as I read the statute, the statute says something different. And correct me if I'm wrong. It makes it illegal for a person, and I'm quoting, authorize, certify, test, or file a claim for benefits which he knows is false. How does giving a legal opinion as to the meaning of a statute constitute authorizing a false claim for benefits? Is this the 53A-119-6, Your Honor? Yeah, and there's 53A-122A. Okay. Just give me a moment to look at the statute, please, Your Honor. Sure. I've got some follow-up questions for you, but go ahead and look at the statute. Certainly. Well, that argument's based on the statutory language that, as Your Honor points out, prohibits the authorization, certification, attestation, or filing a claim for benefits from a local state. What is she authorizing? Well, she would be facilitating the authorization. Where does it say facilitate in the statute? Well, I guess that she would be an accomplice or an aider and abetter. So the word facilitate is not in the statute, but she would be facilitating other people, knowingly providing benefits to people who she knew were not entitled to them, and that, in her mind, that was being done with a corrupt purpose.  That people are not entitled to benefits because, I don't know, they're not employees or somehow it's a matter of fact, as opposed to a legal interpretation of a provision that doesn't say specifically any occupation. It talks about it's a different language. It's suitable and comparable, which she has interpreted as any occupation. And so that's not the same thing as facts in the same sense that Jackler was. At least that's what your adversary just argued. Yes, Your Honor. And thank you for giving me an opportunity to address that issue. So our contention and the allegations in the complaint in this case, which at this stage of the proceeding must be accepted as true, is that this was not a difference over a legal interpretation. It was not a good faith disagreement over the statutory interpretation of this language. We specifically allege in the complaint, and this is most clearly done at paragraphs 31 and 33 of the current version of the complaint, is that the senior officers in the comptroller's office knew and agreed with her that the statute was being misapplied. So if it's a legal opinion that everybody kind of agrees with, but they say that, look, the commission has a different view and we can't advise them on that that way, and they withdraw it. You say closer to Jackler. That would be different from this case, but that's not even this case. So the scenario that Your Honor just outlined is not based on the facts. Let me ask you a slightly different question. If this could be one thing or could be the other, and it's not altogether clear, then why doesn't qualified immunity apply? That is, the question of whether Jackler applies in this case is, seems, could be described as a close one because of the arguments that have been made. And if that is so, why isn't the state official covered by qualified immunity? The district court, Judge Underhill said, Jackler is hard. It's a tough statute, but it is what I say it is, and therefore it covers. But I don't think that's the test for qualified immunity. It isn't whether a judge knows that the statute means that, but what a reasonable officer in that situation would think it was. Your Honor, I think that it's possible that with a different set of facts, this could be a closer call under Jackler. But at this stage of the proceedings, all we have is what's alleged in the complaint. And what's alleged in the complaint is that the senior officers of the comptroller's office knowingly and intentionally directed my client to withdraw a truthful memo that included factual statements. And you say that statement in the complaint is sufficiently plausible so that it is enough to get by at this stage? Yes, Your Honor. And that it is sufficiently plausible that if that, and if that is so, then it isn't a question in doubt that would be covered by qualified immunity? Is that your argument? That's part of my argument, Your Honor. The other part of my argument is that because the defendants in this case are arguing an alternative version of facts that's alleged in the complaint, they don't accept the plaintiff's narrative of the case. They're trying to articulate a legal argument based on an alternative narrative that this court, as I argued in my brief, should not accept interlocutory appellate jurisdiction over the qualified immunity claim. I understand. But if in fact we have to take what happened in what's alleged in the complaint and match it up against Jackler and there's some question about whether Jackler applies, it's debatable, it's not clearly established that Jackler applies, then doesn't qualified immunity follow? Well, I'm not sure that I would agree with the premise of your question, Your Honor. Well, because Jackler was a pure fact case. It didn't involve a legal opinion. Just take it at that limited level. Even though everybody agreed that within the office that her legal opinion was correct, that doesn't make it a statement of fact yet. And that could be a distinction that, you know, Jackler didn't address that question and so one could argue that it's not clearly established. So, Your Honor, I would argue that the facts of this case bear sufficient similarity to the controlling facts in Jackler that it is clearly established for qualified immunity purposes that... Facts as alleged are close enough so that any reasonable employee would say Jackler applies. Yes, Your Honor. If you look at the... They don't even have to say that, right? All they have to do is say that... Well, Jackler would have to be the clearly established rule. Right, so for purposes of... So our First Amendment claim is based on two types of speech. We're focusing right now on the refusal to make false statements portion of it as opposed to the disclosures to the auditors. So for the refusal to make false statements portion of it, Jackler is the case that makes clearly established legal principles that we think preclude the application of qualified immunity... I'm changing the term instead of refusal to make false statements to refusal to make a contrary opinion or an opinion to give an illegal opinion that her job might require. Your Honor, so I would agree with the general proposition that if this was a case about a good faith agreement over statutory interpretation, Jackler would not apply to that. But that's not what we've alleged in the complaint. We've alleged in the complaint that she received a directive after making drafting documents that included statements of fact about the historical application of the standard, statements regarding the erroneous and improper administration of the retirement plans, statements of fact regarding the number of people that are receiving benefits, statements of fact about the cost to the state and millions of dollars, statements of fact about probative evidence of fraudulent claims. In the record, do we have it? The actual statement that was required to be withdrawn? So... Where is that? Yeah, so I believe that the closest portion of it is between paragraphs 31 and 40 of the First Amendment complaint. I see. But you don't actually have the document. We can't go back and read the actual... It wasn't incorporated by reference. No, we don't have the actual document, Your Honor. And so that's one of the reasons why I think that it's premature to address this issue and try for this court to address these issues with finality for purposes of this case just at the pleading stage. I think that there's just as this court has done many times in other cases, that when cases cannot be decided based on pure questions of law, based on the facts alleged in the complaint and they require discovery and the resolution of factual issues, that it's premature to address those issues on an interlocutory appeal for qualifying immunity purposes because they can't be decided based on pure questions of law. They require discovery to adjudicate. Would you address the question of discipline in state law? Yes, Your Honor, I'd be happy to. So our position on that is that assuming that this court gets beyond the jurisdictional question, we've argued in our brief that the court should not accept jurisdiction over that because it's not intertwined or sufficiently overlapping with the qualified immunity appeal and it's not really a sovereign immunity question, it's a statutory interpretation question dressed up in sovereign immunity robes. So you say that we shouldn't hear that at this time anyway. Right, so our initial position is that this court shouldn't address any of the merits issues raised by defendant's appeal for jurisdictional reasons and we've articulated that in our briefing, but assuming that the court does address the merits. Our position is that we have alleged sufficient acts of discipline under either standard. So we've alleged, and this is at pages, I believe, 404. Despite these rather strange, I might say, but Connecticut cases in the Superior Court that say that discipline is not losing tenure, that say discipline is not all of these things, which Connecticut lower courts have said. And so, Your Honor, I'd like to address the issue of how we believe discipline should be interpreted. So we look at that issue as discipline means punishment and common sense definition of punishment means that people impose discipline. Yeah, but this is Connecticut, not common sense. I'm from Connecticut, so I can say that. So discipline is imposed to decrease the likelihood that whatever conduct you're punishing somebody for is repeated in the future. So that bears striking similarity to the Burlington Northern Standard, which is any action, adverse action against an employee that would dissuade a reasonable person from engaging in the underlying protected activity again. And so we think that punishment or discipline should be interpreted as meaning punishment, which can be reconciled and interpreted consistently with Burlington Northern. And we also believe that the interpretation of that statutory provision should be interpreted consistent with several principles. One principle is that the Connecticut Supreme Court has said repeatedly that section 3151Q is a remedial statute and should receive a generous interpretation. Just two years ago, the Connecticut Supreme Court issued another decision in a 3151Q case involving whether the Garcetti Doctrine should be applied to the free speech principles of the Connecticut Constitution. And they held unanimously that they should not because the Connecticut Constitution is broader than the First Amendment. There's no question that on the Garcetti notion, Connecticut has rejected Garcetti and gone beyond my dissent in Weintraub. Yeah, but if you acknowledge that they've done that, it would be incredibly inconsistent for on one hand, the Connecticut Supreme Court to say that this statute is broad enough that it's broader than the First Amendment. But on the same hand, we'd interpret the word discipline narrower than the First Amendment. It doesn't make any sense. And we also would argue that the meaning of discipline should be interpreted consistent with the purpose of the statute. The purpose of the statute was to protect people who engage in underlying protected activity. One would argue that since the statute is broader, what is viewed as retaliation under the statute should be looked at more narrowly. But anyway, good. Thank you. So let me ask you another thing if I can before you sit down. And that is with respect to the auditors. And I'm looking at page 42 of your brief. And you say that the plaintiff had no reason to communicate with the auditors as part of her ordinary job duties because her job as counsel to the retirement division did not cause her to become involved in the financial statement of the office of the comptroller. Now, if you could give me some counsel because I'm not quite understanding. Your whistleblower complaint states, and this is on the appendix on page 138, that on July 16, 2013, plaintiff received a call from the state auditors telling me that they would like to interview me as part of the audit of the division. So it would appear that it was only after the call that the plaintiff met with the auditors and made her complaints. Is that correct? I believe that the answer is that the meeting was on July 30, 2013. Yes, Your Honor. But I believe that there's other facts that are not in the record. And that statement, as you read it from the document, the appendix was not part of the complaint in this case. But I believe that if Discovery were allowed to proceed on this question, that there would be further factual enlightenment which triggered the initial communication from the auditors to the plaintiff. And so... So, well, I mean, the whistleblower complaint is relevant. It is in the appendix on page 138, right? I don't have it in front of me, but I'll take Your Honor at the word that it is in the appendix. I'm quoting correctly. So my question is, if she was responding to the auditor, then isn't it part of her... She's responding as part of her responsibilities. Help me understand. I'm not saying I understand. So Your Honor, at this point, I'm going outside the factual record in order to respond to your question. So my understanding that if Discovery would be allowed to proceed, is that further facts would be introduced in the record that would enlighten the circumstances which prompted the auditor person to contact the plaintiff, such as it may have been communicated to the auditors that the plaintiff had issues that she would like to address. And that in response to that, the auditors may have contacted her to give her cover of doing this in some fashion. But again, that's another reason why we think that it's premature for these issues to be resolved. The job is to render truthful statements to the commission. And she finds an ally in the auditors to help her do that. Why isn't that consistent with her objectives of her employment? A couple of reasons why that would not be triggered the application of Garcetti, Your Honor. One is that several months prior to that, in February and March of 2013, all responsibilities relating to the Retirement Commission and relating to disability retirement were stripped out of her job. So this happened in July. This is four and five months after it was clearly communicated to her that you're no longer responsible for anything to do with the commission. You're no longer responsible for anything to do with disability retirement. And that's alleged in the complaint. Is there a civilian analog to going to the auditors? Yes, Your Honor. If I were just a citizen outside of the whole system, could I go to the auditors? Yes, Your Honor. Section 4-61DD of the Connecticut General Statute allows any person, I believe it's this person, Macy's Citizen, but I think it's this person, to go to the auditors. So there's a civilian analog, which makes this case much different than Weintraub, much different than Garcetti. Let me... Are you saying that she was expressly told before this that she was not as part of her job to do what she did this? Is this what you're saying? You're alleging in the complaint? Yes, Your Honor. We've alleged, I believe, in two different... It was part of her job, but then it was withdrawn. Is that what you're saying? It was never part of her job to go to the auditors. And so part of the reason why we think that Garcetti and its progeny don't apply here is because we don't just look at the subject matter of the speech. We don't look at whether the subject matter of the speech was related to your job duties. We look at whether the actual speech, the speech that was expressed and the manner it was expressed was part of your official job duties. And here she had never talked to the auditors before she disclosed these concerns in July. She was expressly told on two different occasions that she's no longer responsible for anything to deal with the Retirement Commission. In Matthews, when the officer jumped the chain of command and went to the captain, he didn't have a duty to report to the captain. And he reported to the captain. But one of the critical aspects in that case was the fact that there was a civilian analog and the captain opened up his office to people in the community to come in and complain about police practices. And so he did that. And that seems to me what you've just said here would apply maybe in this case. Yes, Your Honor, absolutely. There's a civilian analog here. It's part of the extensive discussion in the district court's ruling about the existence of a civilian analog. Garcetti itself, another reason why we think that that's an important fact, not only for the merits issue, but also for the qualified immunity issue, is that Weintraub and Jackler made it very clear. So this is, again, before Weintraub 2010, Jackler 2011, before any of the alleged adverse actions here. Both of those decisions indicated that the importance of a civilian analog in addressing whether the Garcetti rule applies. And Garcetti itself, and this is... The civilian analog is not by itself determinative. It is one of the factors. If it's still part of her job, the fact that civilians can do it doesn't matter. That's why the more interesting thing to me is whether she was told expressly whatever she may have thought before, or a reasonable person, that now it was not part of her job. And you allege that specifically? Yes, Your Honor. We allege, and I can give you the paragraph numbers. Yes, please. So I just want to make sure my notes are right. So I'm going to look at the complaint as well. So paragraph 43 of the First Amendment complaint, and this is on page 387 of the joint appendix. At the conclusion of the February 14, 2013 meeting, Carlson, who's one of the officials in the comptroller's office, told plaintiff to, quote, take a break from disability retirement, and that there were, quote, other matters to focus on. Paragraph 113 of the First Amendment complaint. Again, this is March 2013. Four months before the plaintiff began communicating with the auditors. Paragraph 113 is on page 405 of the joint appendix. It says, on March 20, 2013, plaintiff's job description was changed, and most references to the commission were removed from the plaintiff's core job duties, as had been directed by, at that time, defendant. More job duties or job duties? It says core job duties. But again, this is... But that's important. I mean, if they weren't part of their core duties, but still part of the things that she was meant to do, that's a very different thing from whether this wasn't part of her job at all. Your Honor, I'm not sure that you can attribute that much significance to the word core. This isn't whether I attribute that much significance, but whether a reasonable person. Again, I'm back to qualified immunity. Yeah. And another instance is on paragraph 66 of the complaint, which is... Paragraph what was the last one? 66, which is page 393 of the joint appendix. In advance of the plaintiff's scheduled meeting with the auditors on July 30, 2013, defendant Halpin told plaintiff that she should not be meeting with the auditors. Halpin directed plaintiff to talk to Natalie Braswell, Assistant Comptroller and General Counsel about how to handle questions from the auditors. Braswell advised plaintiff that she tells the auditors that she, quote, has no knowledge to most questions. And so there's a direct reference to this discussion with the auditors that was approaching. And she was told by her supervisor, you shouldn't even be talking to them. So we believe that those facts alleged in the complaint, which again, must be accepted as true for purposes of the analysis at this point, further reinforce that this is not a Garcetti or a Weintraub case. And I go back to something, just following up on something that Judge Walker said, asked you in terms of the auditors. So in appendix 379, Brown was additionally tasked with, and I quote, implementing corrective policies and procedures for the administration of the retirement system for the commission. To that end, she provided, this is on 393, the auditors of all the corrective policies and procedures that she had designed, drafted and attempted to implement in early 2013, but which were blocked from being presented to the full commission. So isn't this just really part and parcel for employment responsibilities to implement corrective policies for the commission under Matthews? Your Honor, I don't think that, as the way we frame the First Amendment complaint, that those allegations preclude protection for the First Amendment protected speech that we're claiming. We're not claiming First Amendment protected speech for her communications to the commission or her drafting of those policies. We're claiming First Amendment protected speech for her refusal to make false statements and we're claiming protected speech only for her disclosures to an external, independent state agency, the auditors. And so we would not be claiming First Amendment protected speech for those policies that she had drafted for delivery to the commission, although we are claiming protection for her refusal to alter them or modify them under the Jackler line of cases or Jackler case. If we weren't speaking about Jackler, what would your best case be? If we were not speaking about Jackler, well then the refusal to make the false statements claim wouldn't be there because that's based on Jackler. And so it would be limited to... Resulting in criminal liability. Where's the criminal liability in this case for you? Oh, so that's still based on the refusal to make false statements? Yeah. So I think that the criminal liability is implicated in two arenas or two issues. One is the potential liability relating to that larceny statute that I was discussing with Your Honor, the 53A-119 provision, where she would be asked to facilitate something that she believed would be illegal, that she knew was being asked of her for the express purpose of authorizing illegal payments to people. And there's another aspect to the... She herself is not authorizing. She's proven right. She has no power to authorize. She has no power to authorize, but her legal memos were being solicited and she was being directed to change her legal memos for the express purpose of authorizing illegal payments. And that's why she objected. For the direct purpose of opining that the payments, that illegal payments were okay, that the commission would then ratify. That's a more accurate way of putting it, right? I mean, it's not like she's... She's rendering an opinion to the commission. It's not like... She's not directing payments. Right. And can you give me a cite a case or are you aware of any prosecutions where based on someone making what turned out to be a false legal opinion? I can't cite a case at the moment, Your Honor. But if I can revisit that issue, there's another component to that portion of the claim that we alleged and brief, but the district court's ruling, I don't think specifically addressed in the Jackler analysis. And that's the separate issue of when documents were being prepared for submission to the IRS for voluntary correction plans. And in connection with that, her role was to provide information to outside counsel who would be submitting these documents to the IRS. And she was directed to withhold information that she believed that she was duty-bound to share with outside counsel so these submissions to the IRS could be accurate. There's a certification on the IRS form. We've indicated this in our briefing with a link to the actual document. But you're saying that if a lawyer not only believes that an opinion would lead to payments which are wrong, but believes that any position to the contrary is really not worthwhile, a lawyer who is told to change her opinion and does that would be subject or would think that she was subject to criminal prosecution. That is, this is an opinion, but it is an opinion that is shared by everyone and that the reason they're telling me to do something else is not that they believe that this opinion is wrong, but that they want to make the false payment. And nonetheless, I do it, but that, if it could be shown, would be enough to make her criminally liable. I'm not a prosecutor. I've never worked as a prosecutor, but I think that there's enough here for the plaintiff to have held that belief that she should receive protection. Yeah, that's your argument. Yeah. Yes, and so... And is there a case, a precedent that you can cite? I understand the... Is there a case that you can cite for that proposition that Judge Calabresi just said? Not, I'm not aware of a specific case that I can cite, Your Honor, but going back to the IRS document issue, because I just want to complete that. On those forms, there's a certification that the information contained and submitted to the IRS is truthful and accurate, subject to the penalties of perjury, and that would implicate 18 U.S.C. 1001, which is the same statute potentially implicated in Jackler. Basically, what you're saying is that if the legal opinion is such that everybody in the organization agrees to its accuracy and then she's told that she has to say something contrary or withdraw it, that that is sufficient, that is equivalent to Jackler. I believe that it transforms the issue from a difference of legal opinion to a matter of fact, about this is what the law means, this is what the law says. And again, I wouldn't be standing here making this argument if the facts... It's the same as if you're saying it's the same as if the statute had read any occupation. Yes, I believe that's what we're saying. I come back to my question about whether this, which I might well agree with, is sufficiently clear to some employee as to get bi-qualified immunity. That's where I think myself it's right. But whether it's enough to get bi-qualified immunity is what I'll have to struggle with. And the other problem, the other... I guess your point is that qualified immunity here depends upon further facts that need to be developed. Therefore, this is the wrong time. Even though we like to do... The objective is to have a defendant who could be covered by qualified immunity out of the case at the earliest possible time. That it's premature here to make that judgment. Absolutely. We briefed that extensively, Your Honor, about the reasons why we think this court should not accept interlocutory appellate jurisdiction over either of the merits issues or any of the merits issues advocated for by the defendants in this case. And again, I think the argument that we're having about legal opinion versus fact crystallizes the reason why it's premature for this court to accept jurisdiction is because the facts in the complaint are not the facts that the defendant is arguing for the application of qualified immunity and it's not the factual record that's driving many of these questions about could this just be a difference of legal opinion versus a fact? We've alleged it as a factual matter that everybody agreed with her interpretation but she was directed to alter it and make misleading statements for political purposes knowingly and intentionally by the defendants. And there's discussion about that at page 20 of the district court's opinion in the special appendix that Judge Underhill acknowledged that that's what the complaint was alleging. This is an intentional and knowing act of direction to the plaintiff to alter this document for improper purposes, not a good faith disagreement about the law or policy or interpretation. And another point, the limiting factor here that we think that makes Jackler an appropriate application to these facts is that in Jackler you had a situation where somebody was being directed and forced and coerced to withdraw a truthful statement, replace it with a false statement that wasn't true under circumstances when that person had an obligation to be truthful. And so the limiting principle of Jackler that the person had an obligation to be truthful in the statement that was made also applies here. And so I believe that Jackler was clearly established on that point that when a person has an obligation to be truthful makes a truthful statement and then is directed to withdraw a truthful statement and replace it with a false and misleading statement that the refusal to make that false statement when that person has an obligation to be truthful makes it appropriate for the application of Jackler here and makes that principle clearly established for qualified immunity purposes. Thank you. Okay. Thank you, Your Honors. Thank you, Your Honors. Your Honors, as Judge Katzmann noted, there is a sworn statement in the record. It was appended to the motion to dismiss that Ms. Brown herself signed under the pains and penalties of perjury admitting that the auditors called her as a routine audit. And my understanding is that the court can consider and should consider matters of which judicial notice can be taken on a motion to dismiss and therefore her sworn statement that was provided to the district court, judicial notice could be taken of that. Secondly, I would direct the court to join Appendix 395, specifically Paragraph 75. And in that- One second, please. 395. 395, Your Honor. Paragraph 75. Yeah. All right. And there specifically, there's an allegation made by the complainant that the defendant, Yelmini, Ms. Yelmini was a defendant at the time, wanted suitable and comparable to be interpreted as own occupation, not any occupation. So there is a dispute over the interpretation as evidenced by the allegations in the complaint. The third point that I would make is the Supreme Court's pronouncement in White v. Pauley, which says that clearly established law should not be defined at a high level of generality. The clearly established law must be particularized to the facts of the case. And the Supreme Court reiterated that a court must identify a case where a party acting under circumstances similar to those faced by the defendant was held to have violated the law. And I submit to you that there is no case where a civilian retirement division director is given instructions based on the allegations in the complaint that are always followed by the trustee whose responsibility it is, has a fiduciary obligation for the trust. This is how the term should be followed, that that person is now violating a lawyer's First Amendment rights when the lawyer gives an opinion about that. Yeah, but that says that qualified immunity may ultimately apply in this case. And I don't think there's any doubt about it. The question that's raised by opposing counsel is whether that is clear enough now, even under that Supreme Court decision. And that's what I'm struggling with, that this may well be a case where qualified immunity, for the reasons you've said, should apply. But does it apply now at this very preliminary stage? It absolutely does. And the whole purpose, as Your Honor knows, for qualified immunity is to spare the governmental employees the benefits of, or I'm sorry, the pains and penalties, if you will, of litigation. I must say the benefits are appropriate in this case because this has been wonderfully argued by both sides, so it is a benefit. But I would submit there is no case that would have given Ms. Halpin notice that when Ms. Brown was giving an opinion that was contrary to a trustee's opinion on the meaning of a statutory term, she was speaking as a citizen and not as an employee, at a minimum. How would Ms. Halpin had known that? And oh, just to address one, I'm sorry, one final point, if I may. Your Honor, Judge Calabresi asked Brother Counsel about whether or not it was critical that Ms. Brown was told not to speak to the auditors. Those were the facts before the court in both Looney v. Black and Anemone v. MTA. In both of those courts, this court, both those cases, this court stated the fact that somebody persists in speech after a supervisor has told him to stop does not, without more, transform the speech into protected speech made as a private citizen. It would be incongruous to interpret Garcetti as giving broader protections to disobedient employees who decide they know better than their bosses how to perform their duties. Thank you both for your helpful arguments. Thank you. The court will reserve decision.